IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY JULIA NORBERG, Individually and as Special Administrator of the Estate of EARL NORBERG, Deceased, | ) ) ) ) | |
| Plaintiff, | ) | Case No. 02 C 2948 |
| v. | ) ) | Judge Robert W. Gettleman |
| VIACOM, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 24, 2002, plaintiff, Mary Julia Norberg, individually and as special administrator for the estate of her deceased husband, Earl Norberg ("Earl"), brought this suit, alleging that Earl developed lung cancer as the result of exposure to asbestos during his employment, and that several defendants, including Viacom, Inc. ("Westinghouse"),[1] sold, manufactured, distributed, packaged, installed, or otherwise placed the asbestos insulated equipment into commerce. Although this lawsuit was originally filed in this district, it was transferred to the Eastern District of Pennsylvania for inclusion in a multi-district consolidation of asbestos-related claims (the "MDL"). Westinghouse previously filed a motion for summary judgment in the Eastern District of Pennsylvania, which was denied by that court on February 24, 2014. Westinghouse filed the instant renewed motion (doc. 202) for summary judgment. For the reasons discussed below, the court grants Westinghouse's motion.

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

**BACKGROUND**[2]

Plaintiff claims that the decedent was exposed to "asbestos insulated equipment" during his employment at the Joliet and Romeoville Power Stations in Illinois. Plaintiff alleges that several defendants, including Westinghouse, "sold, manufactured, distributed, packaged, installed or otherwise placed [the asbestos insulated equipment] into commerce." As a result of this exposure, plaintiff alleges that decedent developed lung cancer and subsequently died.

Howard Norberg ("Howard"), the decedent's brother, is the only witness who provided testimony regarding the decedent's employment and job duties as related to this lawsuit. Howard and the decedent worked at the Joliet Power Station between 1963 and 1965, during which the decedent worked near turbines that were undergoing insulation work. Howard and the decedent also worked at the Joliet Power Station in the mid-1970s. During this time, workers at the Joliet Power Station were insulating a turbine Howard referred to as "Unit 9," and two new turbines – Units 7 and 8 – were being installed.

The Joilet Power Station is divided in two by the Des Plaines River. On one side of the river is the original plant, built in 1917, and housing turbine Unit 9. Turbine Units 7 and 8 are on the other side of the river. Westinghouse supplied the turbines for Units 7 and 8. The Unit 7 turbine became operational in 1965, and the Unit 8 turbine became operational in 1966. Westinghouse custom-designed both units according to site-specific specifications provided by the architect/engineer for Commonwealth Edison Company (the owner of the Joliet Power Station). Prior to erection, permanent turbine-generator pads were constructed for the Unit 7 and

---

[2] The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule 56.1 statements and responses.

8 turbines, which involved driving pilings deep into the earth, performing excavation work, and then pouring concrete. Each unit was then constructed on its own specifically-designed foundation and permanently anchored or attached to that foundation at numerous points. In constructing the two units, Westinghouse worked closely with the project's architect/engineer, lending its own engineering expertise during the design, construction, and start-up of the units. A Westinghouse field service engineer was present on-site in a supervisory or advisory role during the construction of both units and their start-up.

Howard worked at the Romeoville Power Station for eight to twelve months in the late 1950s or early 1960s. The decedent also worked at the Romeoville Power Station during this time, installing handrail and rebar and moving machinery. There are four turbines at the Romeoville Power Station. Turbine Units 1 and 2 entered service in 1955 and Units 3 and 4 entered service in 1957 and 1963, respectively.

Westinghouse manufactured and supplied the Unit 1 turbine to the Romeoville Power Station. The turbine was custom-designed according to site-specific specifications provided by the architect/engineer for Commonwealth Edison Company (the owner of the Romeoville Power Station). Prior to erection, a permanent turbine-generator pad was constructed for the Unit 1 turbine, which involved driving pilings deep into the earth, performing excavation work, and then pouring concrete. The Unit 1 turbine was constructed on its own specifically-designed foundation and permanently anchored or attached to that foundation at numerous points. In constructing the Unit 1 turbine, Westinghouse worked closely with the project's architect/engineer lending, its own engineering expertise during the design, construction and

start-up of the unit. A Westinghouse field service engineer was present on-site in a supervisory or advisory role during the construction of the Unit 1 turbine and its start-up.

## DISCUSSION

**1. Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**2.     Analysis**

Westinghouse contends that plaintiff's claims relating to its turbines are barred by the Illinois Construction Statute of Repose (discussed below), thereby entitling it to judgment as a matter of law.

**A.     Law of the Case**

As discussed above, Westinghouse previously moved for summary judgment before the MDL judge, who held that there was a genuine issue of material fact as to whether the statute of repose barred plaintiff's claims against Westinghouse. Specifically, the MDL judge concluded that "[a]t least one appellate court in Illinois has held that the statute [of repose] did not bar claims based on an asbestos manufacturer's sale (i.e., supply) of asbestos products (even though the manufacturer also installed the products)." Because plaintiff had "produced some evidence that Defendant supplied the insulation at issue," the MDL judge held that there was a "genuine dispute as to a material fact regarding applicability of the statute of repose (i.e., whether Defendant supplied the insulation at issue), which precludes summary judgment on grounds of that statute."

Plaintiff argues that the MDL judge's opinion denying Westinghouse's motion for summary judgment is law of the case, and thus whether the statute of repose bars plaintiff's claims should not be revisited by this court. The law of the case doctrine provides that "a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." Tice v. American Airlines, Inc., 373 F.3d 851, 853 (7th Cir. 2004); see also HK Systems, Inc. v. Eaton Corp., 553 F.3d 1086, 1089 (7th Cir. 2009) ("The doctrine of law of the case counsels against a judge's changing an earlier ruling that he made in the same case . . . or

5

that his predecessor as presiding judge had made."). The doctrine, however, "is not hard and fast, and so a party is free to argue that an intervening change in law or other changed or special circumstance warrants a departure." Tice, 373 F.3d at 854; see also Curran v. Kwon, 153 F.3d 481, 487 (7th Cir. 1998) ("[L]aw of the case . . . merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power."). Of particular relevance here, the Seventh Circuit has held that "[a] judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case . . .) if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefi[t]ted from it." Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995). Because, as discussed below, the court respectfully finds that the MDL judge erred in its summary judgment analysis and plaintiff is not unduly harmed by the court revisiting the issue, the court, in its discretion, departs from the law of the case.

**B. Illinois Construction Statute of Repose**

Illinois's Construction Statute of Repose ("ICSR") provides that:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILCS 5/13-214(b).

The ICSR requires the court to resolve a two-step inquiry: (1) whether the construction was an improvement to the real property; and (2) whether the defendant engaged in activities that fall within the ambit of section 13-214(b). See Ambrosia Land Investments, LLC v. Peabody Coal Co., 521 F.3d 778, 781 (7th Cir. 2008).

Whether construction constitutes an "improvement" under the ICSR is a question of law, grounded in fact. Id. The Illinois Supreme Court has defined an "improvement" as "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes." St. Louis v. Rockwell Graphic Sys., Inc., 153 Ill.2d 1, 4 (1992). According to the Illinois Supreme Court, in deciding whether an addition to property is an improvement, a court should consider whether it "was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced." Id. at 4-5.

The parties do not appear to dispute that the construction of the turbines at the Joliet and Romeoville stations were improvements to real property. The record establishes that each of Westinghouse's turbines were permanently attached to specially-designed foundations at the power stations and were integral components of the power stations because they helped generate electricity to sell to the public as well as operate the power plants. Likewise, it is undisputed that construction of the turbine units "entailed the expenditure of thousands of man-hours of labor and was completed at substantial cost to the owner of the power plant." As Westinghouse contends, there is no genuine issue of material fact as to whether the Westinghouse turbines at issue in this case were improvements to real property.

The parties' dispute centers on the court's second inquiry under the ICSR – whether Westinghouse was engaged in activities that fall within the ambit of § 13-214(b). "Because the statute was enacted for the express purpose of insulating all participants in the construction

process from the onerous task of defending against stale claims . . . the plain language of § 13-214(b) reflects that purpose and bars only those claims regarding *construction* of an improvement to real property." Ambrosia Land, 521 F.3d at 784 (emphasis included). As such, "for a defendant to benefit from § 13-214, the legal claims against it must arise out of construction-related activity." Id. The ICSR, therefore, does not apply where a defendant is not sued for its acts or omissions in a construction-related activity. Id.

It is undisputed that Westinghouse entered into contracts with the power station owners to manufacture and supply turbines. Westinghouse custom-designed the turbines according to site-specific specifications provided by the power station owners. Although Westinghouse did not erect/install the turbines at the power stations, a "Westinghouse field service engineer was present on-site in a supervisory or advisory role during the construction and start-up of the units" and Westinghouse "worked closely with the project's architect/engineer lending its own engineering expertise during the design, construction and start-up of the units." The record establishes, and plaintiff does not appear to dispute, that in manufacturing and overseeing the installation of the turbines, Westinghouse was engaged in a construction-related activity. See, e.g., Risch v. Paul J. Krez Co., 287 Ill.App.3d 194, 197 (App. Ct. 1997) ("Under the activity analysis, manufacturers are afforded protection when they substantially participate in the incorporation or installation of the product at the jobsite, or custom design the product for the specific jobsite.").

Plaintiff, however, argues that there is a genuine issue of material fact as to whether Westinghouse was a supplier of the asbestos-filled insulation used during the installation of the turbine units. The record establishes that in addition to supplying the turbines that it had

manufactured, Westinghouse also supplied, pursuant to the terms of its contracts with the power stations, the necessary insulation required for each of its turbines. According to the deposition testimony submitted by the parties, this insulation complied with Westinghouse's specifications for each turbine. As with the turbines themselves, Westinghouse did not install the insulation on the turbines, but its technical adviser, who was on site for the erection of the turbines, likewise provided technical advice with respect to the installation of the insulation. Plaintiff contends that Westinghouse, as a supplier of asbestos insulation materials, is not protected under the ICSR, because the "activity of selling or supplying construction products is not enumerated as one of the protected activities under the Illinois [construction statute of repose]." The court disagrees.

Plaintiff has not alleged that Westinghouse manufactured the insulation or sold or distributed it separate and apart from its use on the Westinghouse turbines. Instead, according to plaintiff's own allegations, Westinghouse furnished the insulation as a part of its contract with the power company to provide turbines. According to the record, the insulation was installed on the turbines as an integral part of their erection at the power stations, while Westinghouse employees provided technical oversight and advice. Westinghouse's furnishing of insulation was not a distinct sale activity, but instead was a part of its construction activities in manufacturing and overseeing the erection of the turbines. Holding otherwise would, as the court found in <u>Risch</u>, "render the 'activity analysis' futile." <u>Risch</u>, 287 Ill.App.3d at 196 (affirming trial court's finding that the defendant "was in the business of installing insulation, and that any sale of such products was merely incidental to its installation activities"); <u>see also</u> <u>McIntosh v. A&M Insulation Co.</u>, 244 Ill. App.3d 247 (App. Ct. 1993) (barring plaintiff's action where the plaintiff alleged that the defendant sold, distributed, and installed asbestos products on

9

the jobsite, but failed to plead facts that demonstrated that defendant's selling activities were anything more than incidental to the installation). Accordingly, there is no genuine issue of material fact as to whether Westinghouse engaged in activities that fall within the ambit of the ICSR. Krueger v. A.P. Green Refractories Co., 283 Ill.App.3d 300, 304 (App. Ct. 1996) (explaining that § 13-214(b) applies only where "the manufacturer performed some role related to the construction site beyond provision of standard products generally available to the public and not custom designed for the project"); see also Risch, 287 Ill. App.3d at 197.

Neither Illinois Masonic Med. Ctr. v. A C & S, 266 Ill.App.3d 631 (App. Ct. 1994), nor State Farm Mut. Auto. Ins. Co. v. W.R. Grace & Company-Conn., 24 F.3d 955 (7th Cir. 1994), dictate a different conclusion. In both cases, building owners brought suits against manufacturers of asbestos-containing materials. Illinois Masonic, 266 Ill.App.3d 631 (building owner alleged property damage arising from integration of the defendant manufacturers' asbestos-containing products, such as pipe coverings and ceiling tiles, into its medical buildings); State Farm, 24 F.3d 955 (building owner brought an action against a manufacturer of fire proofing material to recover the cost of removing it after discovering it contained asbestos). Both courts held that the manufacturers, as mere sellers of standard products available to the public, could not invoke the ICSR's protection. Illinois Masonic, 266 Ill.App.3d at 638 (holding that the ICSR "does not apply to an action against an entity which designed and/or manufactured but did not install a material or product which was incorporated into a building during construction *unless* the manufacturer can demonstrate its role in the construction extended beyond furnishing standard products generally available to the public and not custom designed for introduction into the construction project") (emphasis included); State Farm, 24 F.3d at 957

(manufacturer of fire proofing material was not protected by the ICSR because "[i]t merely sold bags of [the product] for application by a contractor or subcontractor at the building site").

As discussed above, and unlike the Illinois Masonic and State Farm defendants, Westinghouse was neither the manufacturer of the asbestos-containing building materials at issue here nor was it merely a seller of the materials. Instead, it supplied the insulation incident to its manufacturing of the turbines and provided technical advice concerning the erection of the turbines, which included the application of insulation.

Krueger is likewise inapposite to the present case. Contrary to the present case, the Krueger plaintiff presented evidence that the manufacturing defendant both sold and installed insulation *and* merely sold, without installation, that same insulation to other contractors on the construction site. Krueger, 283 Ill.App.3d at 303; see also King v. Paul J. Krez Co., 323 Ill.App.3d 532, 539 (App. Ct. 2001) (explaining that Krueger's claims arose out of the defendant's sale of asbestos rope to another company at the jobsite and that this rope was never used at the jobsite). Accordingly, the defendant's activities in Krueger were not limited to construction-related activities.

As discussed above, and unlike in Krueger, Westinghouse did not engage in any distinct sale activity. See King, 323 Ill.App.3d at 538 (affirming summary judgment in favor of defendant manufacturer where "the plaintiff does not cite to any evidence showing that either defendant made independent sales of any of the alleged asbestos-containing materials or placed these material into the stream of commerce"). To the extent that Westinghouse's supply of

11

insulation for application on the turbines it manufactured can even be considered a sale,[3] Westinghouse is still protected under the statute of repose because its role in the construction extended beyond furnishing standard products generally available to the public.  See Illinois Masonic, 266 IllApp.3d at 637; see also Risch, 287 Ill.App.3d at 197 ("[M]anufacturers are afforded protection when they substantially participate in the incorporation or installation of the product at the jobsite, or custom design the product for the specific jobsite.").  Instead, as discussed above, Westinghouse provided insulation that conformed to the specifications required for its custom-designed turbines and then oversaw and provided technical advice with respect to the installation of that insulation.  Because Westinghouse's activities were completed far more than ten years before this action was filed, the ICSR bars plaintiff's claim.

      **C.**      **Overhaul Work**

Plaintiff further argues that summary judgment should be denied because there is a genuine issue of material fact as to whether Earl "was exposed to asbestos due to maintenance and repair during overhaul work associated with Westinghouse turbines at Romeoville in the late 1950s."  In support of this argument, plaintiff directs the court to Howard's deposition testimony stating that overhaul work was completed on the turbine Westinghouse manufactured for the Romeoville Power Station during the time he and Earl worked at the station in the late 1950s or early 1960s.  According to Howard's testimony, insulation was removed from the Westinghouse

---

[3] Both the Risch and King courts held that there was no distinct sales activity even where the plaintiffs presented evidence that the defendants had not paid sales tax when they purchased the asbestos-containing materials, thereby evidencing that they resold the materials prior to installing them (as no sales tax is incurred when wholesale goods are transferred to a purchaser with the intent to resell).  Risch, 287 Ill. App.3d at 198; King, 323 Ill.App.3d at 537.  Here, plaintiff has not even submitted such limited evidence in support of her allegation that Westinghouse sold the insulation at issue.

turbine to allow for maintenance and repair work on the turbine. According to plaintiff, the ICSR "does not protect [Westinghouse] against [her] claims regarding exposure due to repair and maintenance associated with the Westinghouse turbines."

While the court agrees that overhaul work on the Westinghouse turbine at the Romeoville Power Station does not qualify as an improvement to real property, the record establishes that Westinghouse did not perform the overhaul work that was completed during the decedent's time at Romeoville. Westinghouse's corporate representative testified during his deposition that Westinghouse's last service report with respect to the Romeoville turbine was dated August 1, 1955, shortly after installation was complete and the turbine went into service. Thus, Westinghouse's acts or omissions were limited to the manufacturing and construction of the Romeoville turbine, not any subsequent maintenance or repair work. See McSweeney v. A C & S, Inc., No. 96-4025, 2014 WL 4628030, at *5 (C.D. Ill. June 18, 2014) ("[S]tatutory protection arising from the design and initial construction of the turbine extends to injury sustained during overhauls and outages.").

## CONCLUSION

For the forgoing reasons, Westinghouse's renewed motion for summary judgment is granted and judgment is entered in favor of Westinghouse, and against plaintiff Norberg.

**ENTER:** **July 21, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**